1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

HARRY D. OQUIST,

     Plaintiff,

  v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

     Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. SACV 15-00271-JEM

MEMORANDUM OPINION AND
ORDER AFFIRMING DECISION OF
THE COMMISSIONER OF SOCIAL
SECURITY

18

**PROCEEDINGS**

19   On February 17, 2015, Harry D. Oquist ("Plaintiff" or "Claimant") filed a complaint

20 seeking review of the decision by the Commissioner of Social Security ("Commissioner")

21 denying Plaintiff's applications for Social Security Disability Insurance benefits and

22 Supplemental Security Income ("SSI") benefits.  The Commissioner filed an Answer on

23 May 27, 2015.  On August 7, 2015, the parties filed a Joint Stipulation ("JS").  The matter

24 is now ready for decision.

25   Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this

26 Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record

27 ("AR"), the Court concludes that the Commissioner's decision must be affirmed and this

28 case dismissed with prejudice.

**BACKGROUND**

Plaintiff is a 45-year-old male who applied for Social Security Disability Insurance benefits on November 12, 2009, and for Supplemental Security Income benefits on November 18, 2009, alleging disability beginning May 2, 2009.  (AR 109.)  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 2, 2009, the alleged onset date.  (AR 111.)

Plaintiff's claims were denied initially on March 18, 2010.  (AR 109.)  Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Kevin M. McCormick on April 13, 2011, in Orange, California.  (AR 109.)  Plaintiff appeared and testified at the hearing and was represented by counsel.  (AR 109.)  Vocational Expert ("VA") Alan Boroskin also appeared and testified at the hearing.  (AR 109.)

The ALJ issued an unfavorable decision on May 5, 2011.  (AR 109-120.)  On August 23, 2012, the Appeals Council vacated the May 5, 2011, hearing decision and remanded the case.[1]  (AR 125-126.)

A remand hearing was held before ALJ Kyle E. Andeer on March 4, 2013, in Orange, California.  (AR 24.)  Plaintiff appeared and testified at the hearing.  (AR 24.)  Plaintiff was represented by counsel.  (AR 24.)  VA Susan Allison also appeared and testified at the hearing.  (AR 24.)

The ALJ issued an unfavorable decision on June 12, 2013.  (AR 24-37.)  The Appeals Council denied review on December 23, 2014.  (AR 1-4.)

---

[1]  In its Remand Order, the Appeals Council directed the ALJ to give consideration to the examining source opinions and explain the weight given to such opinion evidence; further evaluate Claimant's mental impairment; give further consideration to Claimant's maximum residual functional capacity ("RFC") and provide appropriate rationale with specific references to the evidence of record; and, if warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the asserted limitations on Claimant's occupational base. (AR 24.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1. Whether the ALJ erred in granting of little or no weight to the mental functioning assessments of treating psychiatrist Schwerdtfeger and of examining psychologists McGee and Balada.

2. Whether the finding that Mr. Oquist's subjective complaints are not credible is supported by clear and convincing evidence.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273 , 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantial gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746.  An impairment is not severe if it does not significantly limit the claimant's ability to work.  Smolen, 80 F.3d at 1290.  Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations.  Parra, 481 F.3d at 746.  If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.

1  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).  The claimant bears the burden of

2  proving steps one through four, consistent with the general rule that at all times the

3  burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d

4  at 746.  Once this prima facie case is established by the claimant, the burden shifts to

5  the Commissioner to show that the claimant may perform other gainful activity.

6  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a

7  claimant is not disabled at step five, the Commissioner must provide evidence

8  demonstrating that other work exists in significant numbers in the national economy that

9  the claimant can do, given his or her RFC, age, education, and work experience.  20

10  C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is

11  disabled and entitled to benefits.  Id.

## THE ALJ DECISION

13  In this case, the ALJ determined at step one of the sequential process that Plaintiff

14  has not engaged in substantial gainful activity since May 2, 2009, the alleged onset date.

15  (AR 26.)

16  At step two, the ALJ determined that Plaintiff has the following medically

17  determinable severe impairments: asthma, disorder of the elbow and wrist, psychosis,

18  and anxiety disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).  (AR 26-27.)

19  At step three, the ALJ determined that Plaintiff does not have an impairment or

20  combination of impairments that meets or medically equals the severity of one of the

21  listed impairments.  (AR 27-30.)

22  The ALJ then found that Plaintiff has the RFC to perform work at the light

23  exertional level, as defined in 20 C.F.R. §§ 416.1567(b) and 416.967(b), with the

24  following limitations:

25      Claimant needs a low stress job, defined as occasional decision-

26      making requirements and occasional changes in the work setting, and

27      occasional interaction with the public and co-workers.

28

1  (AR 30-35.)  In determining the above RFC, the ALJ made an adverse credibility

2  determination.  (AR 34.)

3      At step four, the ALJ found that Plaintiff is unable to perform his past relevant work

4  as a piano rebuilder and sprayer/stainer, refinishing.  (AR 35.)  The ALJ, however, also

5  found that, considering Claimant's age, education, work experience, and RFC, there are

6  jobs that exist in significant numbers in the national economy that Claimant can perform,

7  including the jobs of cleaner, assembler/plastic hospital parts and bagger/garment and

8  laundry.  (AR 35-36.)

9      Consequently, the ALJ found that Claimant was not disabled, within the meaning

10  of the Social Security Act.  (AR 36-37.)

11                                    **DISCUSSION**

12      The decision must be affirmed.  The ALJ properly considered the medical

13  evidence and properly discounted Plaintiff's credibility.  The ALJ's RFC is supported by

14  substantial evidence.  The ALJ's nondisability determination is supported by substantial

15  evidence and free of legal error.

16  **I.      THE ALJ PROPERLY DISCOUNTED THE MEDICAL OPINIONS OF**
   **        DR. RICHARD SCHWERDTFEGER, DR. MCGEE AND DR. BALADA**

17      Plaintiff does not challenge the ALJ's light work RFC as to his physical

18  impairments.  He does challenge the ALJ's mental RFC limiting Plaintiff to "a low-stress

19  job, defined as occasional decision-making requirements and occasional changes in the

20  work setting, and occasional interaction with the public and with co-workers."  (AR 30.)

21  More specifically, Plaintiff contends that the ALJ erred in discounting the mental RFCs of

22  Dr. Schwerdtfeger, Dr. McGee and Dr. Balada, all of whom opined Plaintiff cannot work.

23  The Court disagrees.

24      **A.      Relevant Federal Law**

25      The ALJ's RFC is not a medical determination but an administrative finding or

26  legal decision reserved to the Commissioner based on consideration of all the relevant

27  evidence, including medical evidence, lay witnesses, and subjective symptoms.  See

28

1  SSR 96-5p; 20 C.F.R. § 1527(e).  In determining a claimant's RFC, an ALJ must

2  consider all relevant evidence in the record, including medical records, lay evidence, and

3  the effects of symptoms, including pain reasonably attributable to the medical condition.

4  Robbins, 446 F.3d at 883.

5         In evaluating medical opinions, the case law and regulations distinguish among

6  the opinions of three types of physicians:  (1) those who treat the claimant (treating

7  physicians); (2) those who examine but do not treat the claimant (examining physicians);

8  and (3) those who neither examine nor treat the claimant (non-examining, or consulting,

9  physicians).  See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d

10  821, 830 (9th Cir. 1995).  In general, an ALJ must accord special weight to a treating

11  physician's opinion because a treating physician "is employed to cure and has a greater

12  opportunity to know and observe the patient as an individual."  Magallanes v. Bowen,

13  881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  If a treating source's opinion on the

14  issues of the nature and severity of a claimant's impairments is well-supported by

15  medically acceptable clinical and laboratory diagnostic techniques, and is not

16  inconsistent with other substantial evidence in the case record, the ALJ must give it

17  "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

18         Where a treating doctor's opinion is not contradicted by another doctor, it may be

19  rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  However, if the

20  treating physician's opinion is contradicted by another doctor, such as an examining

21  physician, the ALJ may reject the treating physician's opinion by providing specific,

22  legitimate reasons, supported by substantial evidence in the record.  Lester, 81 F.3d at

23  830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

24  2002).  Where a treating physician's opinion is contradicted by an examining

25  professional's opinion, the Commissioner may resolve the conflict by relying on the

26  examining physician's opinion if the examining physician's opinion is supported by

27  different, independent clinical findings.  See Andrews v. Shalala, 53 F.3d 1035, 1041

28  (9th Cir. 1995); Orn, 495 F.3d at 632.  Similarly, to reject an uncontradicted opinion of an

1  examining physician, an ALJ must provide clear and convincing reasons.  Bayliss v.

2  Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  If an examining physician's opinion is

3  contradicted by another physician's opinion, an ALJ must provide specific and legitimate

4  reasons to reject it.  Id.  However, "[t]he opinion of a non-examining physician cannot by

5  itself constitute substantial evidence that justifies the rejection of the opinion of either an

6  examining physician or a treating physician"; such an opinion may serve as substantial

7  evidence only when it is consistent with and supported by other independent evidence in

8  the record.  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

9        **B.**    **Analysis**

10            1.    Dr. Schwerdtfeger

11       Plaintiff's treating psychiatrist Dr. Harry Schwerdtfeger diagnosed panic disorder

12  and other mental disorders that he stated wrecks Plaintiff's ability to concentrate, focus

13  and retain information.  (AR 32, 29, 584, 891.)  Dr. Schwerdtfeger concluded that

14  Claimant was unable to function in the workplace and unable to work.  (AR 32, 584,

15  891.)  The ALJ, however, discounted Dr. Schwerdtfeger's conclusions because they are

16  inconsistent with his treatment notes.  (AR 34.)  An ALJ may reject a treating physician's

17  opinion that is not supported by or is contradicted by his or her treatment notes.  Batson

18  v. Comm'r, 359 F.3d 1190, 1195 n.3 (9th Cir. 2004); Bayliss, 427 F.3d at 1216.

19       The ALJ thoroughly reviewed and discussed Dr. Schwerdtfeger's treatment notes

20  and opinions.  Dr. Schwerdtfeger began treating Claimant in November 2009, finding

21  Claimant's functioning status, including activities of daily living and interpersonal

22  interaction, satisfactory, with no suicidal thoughts or ideation.  (AR 32.)

23  Dr. Schwerdtfeger diagnosed Plaintiff with panic disorder with agoraphobia with a GAF

24  score of sixty.  (AR 32.)  Subsequent visits in January and February 2010 show GAF

25  scores in the sixties, no evidence of suicidal thoughts, satisfaction with medication, and

26  symptoms of anxiety "well controlled," although paranoid feelings remained.  (AR 32.)  In

27  April 2010 and in the months following, Dr. Schwerdtfeger observed that Claimant was

28  doing better with medication, with no side effects or negative drug interactions,

1  consistent with Claimant's own disability reports.  (AR 32-33.)  Treatment notes in March

2  2011 indicated Plaintiff's panic disorder was "without agoraphobia."  (AR 33, 577-579.)

3  Claimant was noted to be doing "really well" with normal cognition and good response to

4  medication without side effects or negative drug interactions.  (AR 33, 577-579.)

5      Plaintiff did not treat again with Dr. Schwerdtfeger after the March 2011 visit until

6  February 2012.  (AR 33.)  Plaintiff's mood was euthymic, cognition normal, and response

7  to medication effective without side effects or negative drug interactions.  (AR 33.)

8  Claimant was diagnosed with panic disorder without agoraphobia and schizophrenia,

9  and a GAF score of seventy.  (AR 33.)  Later in 2012, there were some incidents of

10  instability due to noncompliance with medication.  By February 2013, Claimant was

11  feeling well with no hallucinations or suicidal ideations, cognition was normal, and

12  response to medication effective with a GAF score of seventy.  (AR 33.)

13      Dr. Schwerdtfeger submitted two letters opining that Plaintiff is unable to work.  On

14  April 7, 2011, Dr. Schwerdtfeger wrote a one paragraph letter in which he diagnosed

15  Plaintiff with panic disorder without agoraphobia and paranoid schizophrenia.  (AR 584.)

16  He opined that Plaintiff cannot work due to his mental health condition.  On June 13,

17  2011, Dr. Schwerdtfeger wrote another one paragraph letter, this time diagnosing bipolar

18  disorder, schizoaffective disorder and panic disorder with agoraphobia.  (AR 891.)

19  Dr. Schwerdtfeger stated that these illnesses wreck Plaintiff's ability to concentrate,

20  focus and retain information.  (AR 891.)  He concluded Plaintiff is unable to function in

21  the workplace.  (AR 891.)

22      The ALJ gave little weight to the conclusory opinions in these two letters because

23  they are not supported by Dr. Schwerdtfeger's own treatment notes.  In assessing

24  Dr. Schwerdtfeger's June 13, 2011, opinion that Plaintiff has bipolar disorder and panic

25  disorder "with agoraphobia," the ALJ noted that Dr. Schwerdtfeger's April 7, 2011,

26  opinion and his treatment notes do not include a diagnosis of bipolar disorder and that

27  from March 2011 Claimant's panic disorder consistently had been characterized as

28  "without agoraphobia."  (AR 29 n.2, 33.)  The ALJ then observed discrepancies between

1   Dr. Schwerdtfeger's blanket assessment of disability and his treatment records indicating

2   "GAF scores, which improved from sixty to seventy; effective response to medication

3   (given claimant compliance); normal cognition; reports of the claimant doing really well

4   (eight days prior to Dr. Schwerdtfeger's initial assessment); and no significant

5   deterioration in the Claimant's condition despite nearly a year without treatment." (AR

6   34.)  The ALJ again noted Dr. Schwerdtfeger's diagnoses of bipolar disorder and panic

7   disorder with agoraphobia are not mentioned in the contemporaneous treatment history.

8   (AR 34.)  An ALJ may discount a treating physician's opinion that is conclusory, brief and

9   unsupported by the record as a whole or by objective medical findings.  Batson, 359

10  F.3d at 1995.  As already noted, the ALJ also may discount a treating physician's

11  opinion that is inconsistent with his or her treatment notes.  Batson; Morgan, 169 F.3d at

12  601, 603; Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

13       The Court rejects Plaintiff's contention that the discrepancies identified by the ALJ

14  are minor and reflect a selective view of the treatment notes.  The Court has reviewed

15  Dr. Schwerdtfeger's treatment notes in detail, and substantial evidence supports the

16  ALJ's interpretation of the treatment notes.  For example, Dr. Schwerdtfeger repeatedly

17  noted normal cognition.  (AR 578, 579, 893, 897, 899, 901.)  Plaintiff does not dispute

18  these findings, but asserts they are accompanied by findings of disorder.  Yet

19  Dr. Schwerdtfeger made findings of GAF scores in the seventies, which indicate mild

20  limitations.  Plaintiff attempts to dismiss his GAF scores, but they are relevant, objective

21  medical evidence.  20 C.F.R. § 404.1545(a); Rollins v. Massanari, 261 F.3d 853, 857

22  (9th Cir. 2001).  Also, as noted below, Dr. McGee opined that Plaintiff's psychotic

23  symptoms would only be mildly limiting of Claimant's work if he was properly medicated

24  and if his symptoms were under control.  (AR 459.)  She also found Plaintiff's

25  concentration and attention were within normal limits.  (AR 29, 32, 458.)

26  Dr. Schwerdtfeger, moreover, repeatedly noted that Plaintiff's medications were

27  effective.  Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006)

28  ("Impairments that can be controlled effectively with medication are not disabling").

1       Plaintiff simply disagrees with the ALJ's evaluation of the evidence, but it is the

2 ALJ's responsibility to resolve conflicts in the medical evidence.  Andrews, 53 F.3d at

3 1039.  Where the ALJ's interpretation of the medical evidence of record is reasonable as

4 it is here, it should not be second-guessed.  Rollins, 261 F.3d at 857.  Nor is there any

5 reason to recontact Dr. Schwerdtfeger for clarification because his opinion and treatment

6 notes are not unclear or ambiguous, nor is the record inadequate for proper evaluation

7 of the evidence.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001).

8       The ALJ's rejection of Dr. Schwerdtfeger's opinion is supported by substantial

9 evidence.

10               2.     Dr. McGee

11       On February 26, 2010, Dr. Halimah McGee, a consulting clinical psychologist,

12 examined Plaintiff.  She found Claimant's mannerisms to be within the normal range and

13 his behavior socially appropriate.  (AR 455.)  Plaintiff reported he used a computer and

14 did not require assistance with his self-care.  (AR 32, 457.)  Plaintiff told Dr. McGee he is

15 able to drive his car alone.  (AR 32, 457.)  His mood and affect were socially appropriate,

16 with no symptoms of a psychotic thought disorder.  (AR 32, 458.)  Dr. McGee found,

17 based on testing, that Plaintiff's concentration and attention were within normal limits.

18 (AR 29, 32, 458.)  She found Plaintiff was able to follow directions.  (AR 458.)  She

19 determined his full scale verbal IQ to be 91.  (AR 32, 458.)

20       Dr. McGee diagnosed Plaintiff with psychotic disorder "per Claimant's report and

21 medications."  (AR 32, 459.)  She found Claimant could manage his own funds, and

22 does not display cognitive limitations regarding his ability to work.  (AR 32, 459.)  She

23 also found that Claimant is able to learn a routine, repetitive skill, and that his psychotic

24 symptoms would only be mildly limiting of Claimant's ability to work.  (AR 459.)

25 Dr. McGee, however, indicated that, because his medications were not working properly

26 for him at the time of his examination, his symptoms would impair his ability to function in

27 the workplace at that time.  (AR 34, 459.)  Dr. McGee went on to say that Claimant has

28 had a successful work history and if and when Claimant is adequately medicated and his

1 | symptoms are under control, he would be fully capable of functioning in a work setting.

2 | (AR 459.)

3 |      The ALJ appears to have accepted much of Dr. McGee's report, including the

4 | diagnosis of psychosis disorder, daily activities, concentration, GAF scores, and lack of

5 | cognitive limitations.  The ALJ, however, gave little weight to Dr. McGee's opinion

6 | regarding Claimant's social functioning, finding moderate limitations and restricting

7 | Plaintiff to only occasional interaction with the public and co-workers.  (AR 30.)  The ALJ

8 | also gave little weight to Dr. McGee's opinion that Plaintiff's medication was not working

9 | effectively for him because her assessment is not supported by the treatment history.

10 | (AR 34.)  Plaintiff challenges the ALJ's finding, but as already noted there is

11 | considerable evidence from treatment notes that medication was effective and Plaintiff's

12 | symptoms improved when he was compliant.  (AR 435, 526, 528, 533, 577-78, 893,

13 | 900.)  The ALJ's evaluation of Dr. McGee's testimony is supported by substantial

14 | evidence.

15 |                 3.     <u>Dr. Balada</u>

16 |      Dr. Francesca Balada, a consulting clinical psychologist, examined Plaintiff in May

17 | 2011 and again in February 2013.  (AR 32.)  Dr. Balada found marked limitations in all

18 | areas of functioning and opined that Plaintiff was incapable of even low stress work,

19 | would miss more than 3 days of work per month, and was unable to complete a normal

20 | work week.  (AR 32.)

21 |      The ALJ gave little weight to Dr. Balada's opinions because of inconsistencies

22 | between her findings and the rest of the record.  (AR 34.)  For example, Dr. Balada

23 | found that Plaintiff's psychological and medical issues were preventing him from carrying

24 | out activities of daily living, including driving and self-care.  (AR 28, 33.)  Yet Claimant

25 | and his girlfriend indicated Claimant can drive and handle his personal care.  (AR 28,

26 | 33.)  He also told Dr. McGee he could drive and did not require assistance with his

27 | personal care.  (AR 32, 457.)  Dr. Balada reported suicidal ideation in May 2011, but the

28 | ALJ found that Claimant's treatment history does not corroborate this claim.  (AR 28,

33.)  As already noted, Claimant's treating psychiatrist found no evidence of suicidal ideation.  (AR 32.)  Dr. Balada diagnosed major depressive disorder, which the ALJ also found was not supported by the treatment record.  (AR 33.)  In particular, this condition was not diagnosed by Claimant's treating psychiatrist, Dr. Schwerdtfeger.  (AR 29.)  Dr. Balada also assessed a GAF score of 45 even though Dr. Schwerdtfeger gave a GAF score of 70 a month earlier.  (AR 29, 33.)

In her February 2013 report, Dr. Balada reported suicidal ideation, impaired cognition, major depressive disorder, and a GAF score of 40.  (AR 34.)  Yet a day earlier, Dr. Schwerdtfeger reported no suicidal ideation, normal cognition, effective medication, and a GAF score of 70.  (AR 28, 29, 33.)  The contradictory opinions of other physicians provide specific, legitimate reasons for rejecting a physician's opinion. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Andrews, 53 F.3d at 1043.

* * *

The ALJ properly considered the medical evidence.  The ALJ's rejection of all or a portion of the opinions of Dr. Schwerdtfeger, Dr. McGee and Dr. Balada are supported by substantial evidence.

## II.   THE ALJ PROPERLY DISCOUNTED PLAINTIFF'S SUBJECTIVE SYMPTOM ALLEGATIONS

Plaintiff contends that the ALJ improperly discounted his subjective symptom testimony.  The Court disagrees.

### A.   Relevant Federal Law

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 esp. n.2.  The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence.  Reddick, 157 F.3d at 722; Bunnell, 947

1  F.2d at 343, 345.  If the ALJ finds the claimant's pain testimony not credible, the ALJ

2  "must specifically make findings which support this conclusion."  <u>Bunnell</u>, 947 F.2d at

3  345.  The ALJ must set forth "findings sufficiently specific to permit the court to conclude

4  that the ALJ did not arbitrarily discredit claimant's testimony."  <u>Thomas</u>, 278 F.3d at 958;

5  <u>see</u> <u>also</u> <u>Rollins</u>, 261 F.3d at 856-57; <u>Bunnell</u>, 947 F.2d at 345-46.  Unless there is

6  evidence of malingering, the ALJ can reject the claimant's testimony about the severity

7  of a claimant's symptoms only by offering "specific, clear and convincing reasons for

8  doing so."  <u>Smolen</u>, 80 F.3d at 1283-84; <u>see</u> <u>also</u> <u>Reddick</u>, 157 F.3d at 722.  The ALJ

9  must identify what testimony is not credible and what evidence discredits the testimony.

10  <u>Reddick</u>, 157 F.3d at 722; <u>Smolen</u>, 80 F.3d at 1284.

11     **B.     Analysis**

12         In determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically

13  determinable impairments reasonably could be expected to cause some of the alleged

14  symptoms.  (AR 34.)  The ALJ, however, also found that Plaintiff's statements regarding

15  the intensity, persistence and limiting effects of these symptoms were "not credible."

16  (AR 34.)  Because the ALJ did not make any finding of malingering, he was required to

17  provide clear and convincing reasons supported by substantial evidence for discounting

18  Plaintiff's credibility.  <u>Smolen</u>, 80 F.3d at 1283-84; <u>Tommasetti</u>, 533 F.3d at 1039-40.

19  The ALJ did so.

20         First, the ALJ found Plaintiff's allegations of disabling symptoms inconsistent with

21  the medical evidence.  (AR 34.)  An ALJ is permitted to consider whether there is a lack

22  of medical evidence to corroborate a claimant's alleged disabling symptoms so long as it

23  is not the only reason for discounting a claimant's credibility.  <u>Burch v. Barnhart</u>, 400

24  F.3d 676, 680-81 (9th Cir. 2005) Here, the ALJ cited mild GAF scores, effective

25  response to medication, normal cognition, and no significant deterioration in Claimant's

26  condition despite a year without treatment.  (AR 34.).

27         Second, the ALJ found that Plaintiff's daily activities are inconsistent with disabling

28  limitations, which is a legitimate consideration in evaluating credibility.  <u>Bunnell</u>, 947 F.2d

1  at 345-46.  Specifically, the ALJ noted that Plaintiff has no problems with personal care,

2  makes his bed, cares for his cat, reads, uses a computer, gardens, attends doctors'

3  appointments, and drives a car.  (AR 34.)  Plaintiff contends these activities do not prove

4  he can work but they do evidence Claimant has greater functional abilities than alleged.

5  See Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009).

6      Third, the ALJ noted inconsistencies in Plaintiff's statements about his subjective

7  symptoms.  An ALJ may consider such inconsistencies in evaluating credibility.  Light v.

8  Social Sec. Adm., 119 F.3d 789, 792 (9th Cir. 1997); Thomas, 278 F.3d at 958-59.  The

9  ALJ found that Plaintiff stated in disability reports and reported to Dr. Schwerdtfeger that

10  he had no medication side effects or negative drug interactions, but testified at the

11  hearing that his medications could cause fatigue, inability to sleep, becoming jittery, and

12  involuntary leg movements.  (AR 30-31, 32-33, 34.)  Plaintiff focuses on the evidence for

13  these conditions but never responds to the inconsistencies in his prior statements.

14      Fourth, the ALJ noted instances of noncompliance with medication.  An ALJ may

15  consider the failure to seek treatment in evaluating credibility.  Molina v. Astrue, 674

16  F.3d 1104, 1113-14 (9th Cir. 2012); Tommasetti, 533 F.3d at 1039.  Plaintiff, however,

17  argues that noncompliance was the result of financial considerations or his mental

18  condition.  The Commissioner does not offer a convincing reply.  Nonetheless, the other

19  credibility factors discussed above are sufficient to support the ALJ's adverse credibility

20  determination.  Carmickle v. Comm'r, 533 F.3d 1155, 1162 (9th Cir. 2008).

21      Plaintiff disputes the ALJ's adverse credibility determination, but again it is the

22  ALJ's responsibility to resolve ambiguities in the record.  Andrews, 53 F.3d at 1039.

23  Where the ALJ's interpretation of the record evidence is reasonable, as it is here, it

24  should not be second-guessed.  Rollins, 261 F.3d at 857.

25      The ALJ rejected Plaintiff's subjective symptom testimony for clear and convincing

26  reasons supported by substantial evidence.

27                                                      * * *

28

15

1    The ALJ's RFC is supported by substantial evidence.  The ALJ's nondisability

2  determination is supported by substantial evidence and free of legal error.

3                                    **ORDER**

4      IT IS HEREBY ORDERED that Judgment be entered affirming the decision of the

5  Commissioner of Social Security and dismissing this case with prejudice.

6

7  DATED: September 25, 2015                   /s/ John E. McDermott
                                             JOHN E. MCDERMOTT
8                                            UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28